ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| EDUCATION LOGISTICS, INC., a Montana corporation, and LOGISTICS MANAGEMENT, INC., a Washington corporation, | § § § § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | |
| LAIDLAW TRANSIT, INC., a Delaware corporation | § § § § | |
| Defendant, | § § § | |
| v. | § § § | |
| TYLER TECHNOLOGIES, INC., | § § § | |
| Respondent. | § § | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

MAR 8 2011

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

**3 - 11MC - 0 3 6 - L**

MISC. ACTION NO. _____
(Civil Action No. 07-06-M-DWM
Action pending in: District of Montana,
Missoula Division)

---

**Appendix to Plaintiffs' Emergency Motion to Compel
Document Production with Brief in Support**

---

Plaintiffs Education Logistics, Inc. and Logistics Management, Inc. (collectively, "Edulog") submit this Appendix to their Emergency Motion to Compel with Brief in Support:

**Exhibit A**  **Declaration of Samuel T. Bull in Support of Plaintiffs' Emergency Motion to Compel**

**Exhibit B**  **Declaration of Hien Nguyen in Support of Plaintiffs' Emergency Motion to Compel**

**Exhibit C**  **Declaration of Bill Swendsen in Support of Plaintiffs' Emergency Motion to Compel**

**Exhibit D**  **Declaration of Alan C. Hess in Support of Plaintiffs' Emergency Motion to Compel**

**Appendix to Plaintiffs' Emergency Motion to Compel Document Production
with Brief in Support**                              **Page 1**
517841 000002 DALLAS 2716854.1

Respectfully submitted,

Stephen C. Schoettmer
State Bar No. 16551420

Kim McCrea
State Bar No. 24041434

THOMPSON & KNIGHT L.L.P.
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1700
Fax:    (214) 969-1751

**ATTORNEYS FOR PLAINTIFF
EDUCATION LOGISTICS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served

upon all counsel hand delivery on March 8, 2011.

Kim McCrea

**Appendix to Plaintiffs' Emergency Motion to Compel Document Production
with Brief in Support          Page 2**
517841 000002 DALLAS 2716854.1



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

EDUCATION LOGISTICS, INC., a
Montana corporation, and LOGISTICS
MANAGEMENT, INC., a Washington
corporation,

      Plaintiffs,

v.

LAIDLAW TRANSIT, INC., a Delaware
corporation

      Defendant,

v.

TYLER TECHNOLOGIES, INC.,

      Respondent.

§§§§§§§§§§§§§§§§§§§§§§§§

MISC. ACTION NO. _____
(Civil Action No. 07-06-M-DWM
Action pending in: District of Montana,
Missoula Division)

---

### Declaration Of Samuel T. Bull In Support Of Plaintiffs' Emergency Motion To Compel

---

SAMUEL T. BULL declares:

1.    I am over the age of 18 and make this declaration based on my own personal knowledge.

2.    I am one of the attorneys for Plaintiffs Education Logistics, Inc. and Logistics Management, Inc. (collectively, "Edulog") in the lawsuit pending in the U.S. District Court for the District of Montana captioned *Education Logistics, Inc. v. Laidlaw Transit, Inc.*, Cause No. CV02-183 (the "Montana Action"). In the Montana Action, Edulog is suing Laidlaw for breach of contract. One of Edulog's principal claims against Laidlaw is that it failed to use its "best efforts to promote" the Edulog Software as required by a 1992 Agreement between Edulog and Laidlaw ("failure to promote claim"). (Complaint ¶¶ 17, 22, 24-30, 1992 Agreement § 2.3.3.)

BULL DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 1

51131310.1

EXHIBIT
A
tabbies

The documents sought in the Edulog's subpoena to Tyler Technologies, Inc. ("Tyler") relate to this claim.  A true and correct copy of the Complaint in the Montana Action is attached as Exhibit 1.  A true and correct copy of the 1992 Agreement is attached as Exhibit A to the Complaint.

3.      Attached as Exhibit 2 is the FirstGroup plc Acquisition Announcement relating to the acquisition of Laidlaw International, Inc. ("FirstGroup's Announcement").  During the pendency of this suit, Defendant Laidlaw Transit, Inc. was acquired by FirstGroup plc, the largest bus and rail transport operator in the United Kingdom for approximately $3.6 billion.  (Ex. 2, p. 5.) According to FirstGroup's Announcement, on or around the time the Montana Action was commenced, Laidlaw was the largest private bus contractor in the United States, with contracts with more than 1,000 school boards and districts in North America, and a fleet of approximately 41,000 buses.  (*Id.*, pp. 5-6.)

4.      Attached as Exhibit 3 is the FirstGroup plc Annual Report and Accounts 2010.  According to Exhibit 3, FirstGroup plc is currently the largest transport operator in the United Kingdom and North America with revenue of over $9.7 billion per year, operating approximately 62,000 school buses, and employing more than 130,000 staff on two continents to transport some 2.5 billion passengers per year.  (Ex. 3, p. 4.)

5.      Attached as Exhibit 4 is a true and correct copy of the "About Us" page from Tyler's website.

6.      Attached as Exhibit 5 are true and correct excerpts from the Bloomberg Law Company Report for Tyler, headquartered in Dallas, Texas.  According to the Bloomberg Law

Company Report, Tyler has approximately 2,000 employees and annual revenue of nearly $300 million.  (Ex. 5, pp. 1, 16)

7.      Attached as Exhibit 6 is a true and correct copy of an article in The Business Review announcing Tyler's acquisition of VersaTrans Solutions, Inc.

8.      Attached as Exhibit 7 is a true and correct copy of the 9th Circuit Court of Appeals' decision in *Education Logistics, Inc. v. Laidlaw Transit, Inc.*, 309 Fed. Appx. 742, 742 (9th Cir. 2010).  In this decision the 9th Circuit ruled, as a matter of law, that the promotion duties contained in Section 2.3.3 of the 1992 Agreement survived the end of the exclusive license.

9.      Attached as Exhibit 8 is a true and correct copy of the subpoena duces tecum and accompanying documents served on Tyler in this matter.  Edulog provided these documents to Tyler at its Dallas office on February 14, 2010.  The documents provided included a cover letter discussing the subpoena and the reasons for the document requests, a copy of the subpoena, the exhibit to the subpoena, and a copy of the existing protective order in the Montana Action. While the existing protective order only covers parties to the Montana Action, in my cover letter to Versatrans, I explained that Edulog would be willing to stipulate to the entry of a protective order providing similar protections for Versatrans, including a designation for trade secret-type documents that would preclude Edulog from reviewing such documents.

10.     Edulog formally served Tyler with the subpoena duces tecum on February 18, 2011.  Tyler responded to the subpoena with a February 28, 2011, letter asserting boilerplate objections and refusing to produce a single document.   I discussed Tyler's response with its attorney, who refused to withdraw Tyler's objections and maintained that Tyler would not be

BULL DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 3

producing a single document. A true and correct copy of Tyler's response to Edulog's subpoena is attached as Exhibit 9.

11.     Attached as Exhibit 10 are true and correct excerpts from the deposition of Sean O'Halloran, a Laidlaw employee.

12.     Attached as Exhibit 11 is the Declaration of Craig Griffiths, a former Laidlaw employee, in which Mr. Griffiths states that his superiors at Laidlaw were so unhappy that he had recommended the Edulog Software to a New Orleans school district that he had to call up the former CEO of Versatrans to explain his reasoning.

13.     While Tyler has generally asserted that its financial information is confidential and trade secret protected, it has disclosed similar information in the past to news sources.  For example, in a February 5, 2007 article in The Business Review, Versatrans disclosed that, "VersaTrans ended 2006 with sales of $7.1 million and added 131 new clients for a total of 1,260 school districts.  In 2005, it reported $5.6 million in sales, up from $5 million the previous year. The company now has had six consecutive record-breaking quarters."  A true and correct copy of this article is attached as Exhibit 12.

14.     In order to facilitate Dr. Hess's market analysis, Edulog has subpoenaed documents from Tyler (Versatrans), Transfinder, and Trapeze, the most significant bus routing software developers. Edulog has also subpoenaed documents from GeoSpatial Technologies, a software developer with whom Laidlaw briefly entered into an exclusive agreement in the mid-2000s.

15.     Edulog requests an expedited ruling on its motion in light of the extremely limited time period in which it has to conduct discovery and complete its expert report in the Montana

BULL DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 4

Action. Discovery was re-opened on Edulog's failure-to-promote claim on January 14, 2011. The deadline for Edulog to file failure-to-promote related expert reports is April 15, 2011. Prior to that time, Edulog will need to collect the necessary market data and liability data sought in its subpoenas to Tyler and other routing software providers, after which its expert will need to process the various data received and draft his expert report. Because of this limited time window, it is important that the parties' resolve the current impasse over Edulog's subpoena to Versatrans as expeditiously as possible. A true and correct copy of the current scheduling order is attached as Exhibit 13.

16.    To date, Edulog has been diligent in seeking discovery relating to its failure to promote claim. In the Montana Action, prior to the 9th Circuit's ruling that Laidlaw's duty-to-promote continued under the 1992 Agreement, the Montana trial court had entered a protective order precluding Edulog from seeking failure-to-promote claim discovery. In fact, any time that Laidlaw's counsel believed that discovery might somehow relate to the failue to promote claim, they were quick to object. See Exhibit 10, O'Halloran Dep. 93:13-14, "Sam, you are not trying to go into the best efforts issue, are you?"

17.    After the case was remanded, Edulog moved to re-open discovery. The Court granted this motion on January 14, 2011. Edulog served discovery on Laidlaw on January 18, 1011 and immediately started to prepare subpoenas to be issued to other software vendors, such as Tyler. Since January 14, the Montana Action has been very busy as both parties have been exchanging discovery (though Laidlaw still refuses to produce substantive responses to specific failure-to-promote claim discovery) and Laidlaw has re-filed summary judgment motions. While, by agreement of the parties, Laidlaw's substantive answers are due on March 8, 2011, a

BULL DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 5

51131310.1

review of its objections to Edulog's failure-to-promote discovery makes it clear that Edulog will also likely need to request assistance from the Montana trial court to compel Laidlaw to meet its discovery obligations. *See, e.g.*, Laidlaw's responses to Interrogatory Nos. 5, 6, and 7, and RFP Nos. 2, 3, 4, 5, and 8. A true and correct copy of Laidlaw's recently served discovery objects are attached as Exhibit 14.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 8th day of March, 2011, in Seattle, Washington.

_____

Samuel T. Bull

BULL DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 6



Ronald A. Bender, Esq.
WORDEN THANE P.C.
Attorneys at Law
111 North Higgins, Suite 600
P.O. Box 4747
Missoula, Montana 59806
Telephone: (406) 721-3400
Facsimile: (406) 721-6985

Attorneys for Plaintiffs Education Logistics, Inc.,
and Logistics Management, Inc.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| EDUCATION LOGISTICS, INC., a Montana corporation, and LOGISTICS MANAGEMENT, INC., a Washington corporation, <br> Plaintiffs, <br><br> -vs- <br><br> LAIDLAW TRANSIT, INC., a Delaware corporation, <br> Defendants | Cause No. CV-07-06-M-DWM <br><br> COMPLAINT FOR BREACH OF CONTRACT AND DEMAND FOR JURY TRIAL |

Education Logistics, Inc. ("Edulog") and Logistics Management Inc. ("LMI")

(collectively "Plaintiffs") state as follows:

### I. PARTIES

1.  Edulog is a corporation organized and existing under the laws of Montana and has

its principal place of business at 3000 Palmer Street, Missoula, Montana.

2.  LMI is a Washington corporation and has its principal place of business at 5460 E.

Mercer Way, Mercer Island, Washington, 98040. Edulog and LMI are affiliates.

3.  Laidlaw Transit, Inc. d/b/a Laidlaw Education Services ("Laidlaw") is a Delaware

corporation and has its principal place of business at 55 Shuman Blvd., Suite 400, Naperville,

Illinois 60563.



## II. JURISDICTION AND VENUE

4.      Subject matter jurisdiction is proper under 28 U.S.C. §1332(a) because the Plaintiffs and the Defendant are diverse and the amount in controversy exceeds $75,000 exclusive of interests and costs.

5.      Subject matter jurisdiction over the state law claims is proper under 28 U.S.C. §1367(a).

6.      Personal jurisdiction is proper because Laidlaw maintains offices in Missoula, Montana.

7.      Venue is proper under 28 U.S.C. § 1400 (a) and 28 U.S.C. §1391(a) because Laidlaw is subject to personal jurisdiction in this district and many of the events or omissions giving rise to the claims occurred in this district.

## III. GENERAL ALLEGATIONS

8.      Edulog has developed proprietary computer software (the "Software"), currently known commercially as "Edulog.nt" or the "Edulog System" which uses digitized maps and student databases to provide efficient administration of bus routing for the business of transporting students.  The Edulog System allows school districts to efficiently create and operate bus routes.  Edulog markets the Edulog System to school districts throughout the United States and Canada.

9.      LMI was formed in May, 1992 by Edulog's principal shareholder to, among other things, license the Edulog System to school boards, school districts and other institutions or agencies involved with education.  LMI was to focus on international business.

10.      To further that activity, Edulog granted LMI a perpetual and unlimited license to use and to grant to others a license to use the Edulog System.  Although Edulog granted these rights to LMI exclusively and to no other entity, Edulog retained ownership of the Software, including the right to license the Software to school districts.

11.      Laidlaw is one of the largest contractors providing student transportation services

COMPLAINT FOR BREACH OF CONTRACT AND DEMAND FOR JURY TRIAL          Page 2

in North America. Laidlaw contracts with school districts to provide busing services to transport children to and from schools.

12.     On or about June 30, 1992, LMI and Laidlaw entered into an agreement for the licensing and use by Laidlaw of the Edulog System and Products ("Agreement"). "Product[s]" and "Software" were defined in the Agreement to include the Edulog System. Edulog is a third-party beneficiary of the Agreement and has certain obligations under the Agreement. A copy of the Agreement is attached as Exhibit A.

13.     The Agreement granted Laidlaw a renewable, exclusive five-year right to market, install, apply, maintain, develop, support and use the Product for school bus transportation services. Although the license to Laidlaw was described as "exclusive", LMI maintained the right to market the Product to school boards, school districts, educational institutions and state and federal agencies involved in schooling and education. At the end of the initial five-year term, Laidlaw elected not to renew its exclusive license.

14.     Under Section 2.1 of the Agreement, Laidlaw was also granted a perpetual non-exclusive license to market, install, apply, maintain, develop, support and use the Product for or in connection with school bus transportation services. Since the expiration of the exclusive license in 1997, Laidlaw has operated under the non-exclusive license.

15.     Section 4.2 of the Agreement requires Laidlaw to pay LMI a "Royalty" for each New Bus (as defined in Section 4.3 of the Agreement) placed into service after the date of the Agreement. Section 4.4 of the Agreement specifies when royalties must be paid. Royalties are to be paid under both the exclusive and non-exclusive license.

16.     Section 4.7 of the Agreement requires Laidlaw to pay certain fees to LMI in addition to the New Bus Royalties described above. For example, Laidlaw must pay LMI $1,000 for each installation by Laidlaw of the Software on a computer system. The obligations of Section 4.7 apply under both the exclusive and non-exclusive license.

17.     Section 2.3.3 of the Agreement requires Laidlaw to "use its best efforts to promote

COMPLAINT FOR BREACH OF CONTRACT AND DEMAND FOR JURY TRIAL                    Page 3

the use of the Software and related services provided by LMI, with regard to Laidlaw's existing customer base at any given time, and with regard to prospective customers and new accounts." Laidlaw is required to ensure that its employees, contractors and agents do not contravene the provisions of the Agreement. The obligations of Section 2.3.3 apply under both the exclusive and non-exclusive license.

18.    In some locations, Laidlaw has installed the Edulog System on Laidlaw computers located at Laidlaw's office. The Laidlaw office then operates the Edulog System for the benefit of school districts in the area served by that office. In other locations, school districts have purchased a license to use the Edulog System to allow them to operate the System without reliance on Laidlaw.

19.    In still other locations, Laidlaw has provided school districts what Laidlaw characterizes as "look-up access." "Look-up access" allows a school district to access its bus route and schedules. Upon information and belief, "Look-up access", is possible only by using at least part of the Edulog System.

20.    Upon information and belief, Laidlaw has provided "look-up access" to at least the following school districts:  Conneault School District (PA), Kirkwood School District (MO), Hamden School District (CT), Miller Place School District (NY), Norwin School District (PA), Palm Springs School District (CA),Wall Township School District (NJ), Buffalo School District (MN), DeKalb School District (IL), East Penn School District (PA).  Laidlaw has provided "look-up access" to these school districts, and possibly others, without Edulog's permission and without paying the royalties or fees due under the Agreement.  Nor have the school districts paid any royalties or fees under the Agreement.

21.    In addition, Laidlaw, through its computer routing division, Laidlaw Planning Solutions ("LPS"), directly competes with Edulog to provide routing software to school districts in violation of its contractual duty to promote Edulog's Software.  Laidlaw and/or LPS entered into a contract with GeoSpatial Technologies, Inc. ("GST"), a competing provider of routing and

COMPLAINT FOR BREACH OF CONTRACT AND DEMAND FOR JURY TRIAL                    Page 4

other software, to jointly promote GST's software and jointly submit bids to school districts for the provision of school bus routing software to the Leon County, Florida School District. Laidlaw/LPS and GST were awarded the contract in Leon County. Edulog believes that Laidlaw has breached its contractual duties to Edulog in its dealings with other school districts as well.

22.     Upon information and belief, Laidlaw has entered into a contract with VersaTrans (another competing provider of routing software) and is promoting VersaTrans software in contravention of its duty to promote Edulog software under the Agreement.

23.     Edulog is also aware of at least one instance where Laidlaw has affirmatively discouraged a school district from using Edulog's software and believes that this has occurred in other school districts in violation of Laidlaw's duty to promote Edulog software under the Agreement.

## IV.  CLAIMS

### BREACH OF CONTRACT

24.     Pursuant to Section 2.3.3 of the Agreement, Laidlaw must use its best efforts to promote the use of the Software and related services provided by LMI to existing and prospective Laidlaw customers. Laidlaw has breached Section 2.3.3 by promoting routing software provided by other vendors and discouraging the use of the Software. Laidlaw has entered into an agreement with GST to compete directly with LMI and Edulog for the provision of routing software to school districts. This breach of the Agreement has, among other things, resulted in the loss of licensing fees and royalties to LMI and Plaintiffs.

25.     Pursuant to Section 4 of the Agreement, Laidlaw must pay a royalty for each new bus placed into service after the date of the Agreement. Section 4.2 obligates that Laidlaw is to pay to LMI $1,000.00 per bus for the first 500 buses and $1,250.00 per bus in excess of 500 buses in each contract.

26.     Laidlaw has failed to pay royalties as required by the Agreement.

27.     Pursuant to Section 4.7 of the Agreement, LMI is entitled to receive a fee of

COMPLAINT FOR BREACH OF CONTRACT AND DEMAND FOR JURY TRIAL                    Page 5

$1,000 for each installation of the Software on a computer system, $500 for each feasibility or pre-bid study completed by Laidlaw utilizing the Software, and/or a licensing fee in the event that a Laidlaw customer requires ownership of the Software.

28.    Laidlaw has violated its Agreement with Plaintiffs by failing to pay the additional fees required by Section 4.7 of the Agreement between Plaintiffs and Laidlaw.

29.    Laidlaw has violated the Agreement by providing "look-up access" to school districts without Edulog's permission and without paying fees and royalties owed as a result.

30.    Edulog has been damaged by Laidlaw's failure to pay the required royalties and fees in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as follows:

1.    They receive judgment against Laidlaw for all royalties and fees due and owing under the Agreement, and any and all other damages, including lost profits resulting from Laidlaw's breaches of the Agreement, including but not limited to its failure to use its best efforts to promote the use of the Product as required by Section 2.3.3 of the Agreement, plus interest on said amounts from the date they are capable of being made certain until paid.

2.    They be granted such other and further relief as may be equitable and as this Court may deem just and proper under the circumstances, including interest, their costs, and a reasonable attorneys' fee herein.

Dated this 11th day of January, 2007.

/s/ Ronald A. Bender
Ronald A. Bender
Worden Thane P.C.
Attorneys for Plaintiffs Education Logistics, Inc.
and Logistics Management, Inc.

/

/

/

COMPLAINT FOR BREACH OF CONTRACT AND DEMAND FOR JURY TRIAL              Page 6

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of all issues so triable.

Dated this 11th day of January, 2007.

/s/ Ronald A. Bender
Ronald A. Bender
Worden Thane P.C.
Attorneys for Plaintiffs Education Logistics, Inc.
and Logistics Management, Inc.

06016440

13

# EXHIBIT A

HON

## AGREEMENT

THIS AGREEMENT made as of the 30th day of June,

1992,

**BETWEEN:**

    **LOGISTICS MANAGEMENT, INC.,** a Washington corporation, having a place of business at 2930 76th Avenue, S. E., #A203, Mercer Island, Washington 98040

**AND:**

    **HIEN NGUYEN,** of 2930 76th Avenue, S.E., #A203, Mercer Island, Washington 98040

**AND:**

    **LAIDLAW TRANSIT, INC.,** a Delaware corporation having a place of business at Suite 400, 669 Airport Freeway, Hurst, Texas 76053

**WITNESSES THAT:**

**WHEREAS:**

    A.  LMI and Shareholder have represented to Laidlaw that Education Logistics, Inc., a Montana corporation has developed certain proprietary computer software, referred to commercially as the Edulog System, (the "Edulog System") which uses digitized maps and student data bases to provide efficient administration of school bus routing and routing changes for the student transportation business; and which also has the capability to determine routes, and uses specialized mathematical optimization formulae to optimize routes. LMI and Shareholder have represented that the Edulog System in general assists school transportation staff in performing student functions, bus functions, bus stop functions, bus run functions and generalized reporting, and that the programs operate in a number of operating system environments, are on-line and interactive;

    B.  LMI and Shareholder have represented to Laidlaw that Edulog and LMI have entered into a contractual relationship whereby Edulog has granted to LMI the perpetual, exclusive and unlimited license to use and to grant to others a license to use the Edulog System;

    C.  LMI and Shareholder have represented to Laidlaw that LMI has the ability to cause Edulog to support, maintain and develop the Edulog System, and to support its installation, maintenance and use in working environments;

    D.  LMI and Shareholder have represented to Laidlaw that

- 1 -

**EXHIBIT A**

**Page 1   of 93**

Edulog is the sole legal and beneficial owner of the Edulog System and all property, intellectual and other rights associated with it, subject to the perpetual, exclusive and unlimited license granted to LMI described above, and that the Edulog System does not infringe on any copyright, patent or intellectual property or other rights of others;

E.    LMI has agreed to grant to Laidlaw a perpetual non-exclusive license and a renewable exclusive license to use the Edulog System and all developments thereof in connection with the school bus transportation business of Laidlaw and its affiliates, on the terms and conditions set out in this Agreement;

F.    Shareholder is the beneficial and record owner of more than ninety-eight percent (98%) of all of the issued and outstanding shares of each of LMI and of Edulog;

G.    To induce Laidlaw to enter into this Agreement, Shareholder has guaranteed to Laidlaw the performance by LMI of all of its obligations hereunder, and has agreed to indemnify and hold Laidlaw harmless from any loss or damage incurred by Laidlaw as a result of any breach by LMI of its representations or obligations hereunder.

THEREFORE, in consideration of good and valuable consideration paid and given by Laidlaw to LMI and Shareholder (the receipt and sufficiency of which is hereby acknowledged by each of LMI and Shareholder), and the promises and agreements hereinafter contained, LMI, Shareholder and Laidlaw agree as follows:

1.0    **DEFINITIONS**

The following words and phrases have the meanings indicated:

"Component": Any individually identified or identifiable item of Software, Documentation, Supporting Materials, Follow-On Products or Related Products.

"Confidential Information": The meaning set forth in section 7.1.

"Documentation": All manuals, user guides, diskette labels, training manuals, courseware, etc., related to the Product and released or in use by Edulog or LMI at the date of execution of this Contract as well as all upgrades, enhancements and improvements prepared or published at any time thereafter.  Documentation shall be of such quality as to provide Laidlaw with reasonable and all necessary assistance in using the Product.

- 2 -

*Heal*

"Edulog": Education Logistics, Inc., a Montana corporation.

"Edulog User Manual": the user manual pertaining to and describing in detail the Software and how to use it, prepared and published by or on behalf of Edulog from time to time.

"Extension": successive five (5) year periods' commencing with the 5th anniversary of the date of this Contract, as described in section 4.6.

"Fiscal Quarter": each three month period ended November 30, February 28 (or 29 in leap years), May 31, and August 31 respectively.

"Fiscal Year": means each twelve month period ended on August 31.

"Follow-On Products":

(a) Any school bus transportation product that incorporates a reasonable portion of the user-oriented functionality, functions, etc., of one or more of the Product and/or Components acquired (by license or otherwise) by Laidlaw under this Contract; and

(b) Any school bus transportation product marketed by Edulog or LMI under the same general product name as any Product or Component acquired by Laidlaw under this Contract; and

(c) All upgrades, modifications and enhancements to any Product or Component acquired by Laidlaw under this Contract.

"Initial Period": the five (5) year period from the date of this Contract until the 5th anniversary thereof.

"Laidlaw": Laidlaw Transit, Inc., its affiliates and subsidiaries.

"Laidlaw Customer": any party with whom Laidlaw has, at the date hereof or in the future, a contractual relationship for the supply by Laidlaw of school bus transportation services of any kind.

"Licensed Territory": Canada, the United States of America, Mexico, and their respective territories and dependencies.

— 3 —



"LMI": Logistics Management, Inc., a Washington corporation.

"New Bus": the meaning set forth in section 4.3 hereof.

"Product": All Software, Documentation, and Supporting Materials as described in the Edulog User Manual current and delivered to Laidlaw at the date of execution of this Contract, as well as all upgrades, enhancements, and improvements thereof or thereto prepared or published at any time thereafter, all specialized knowledge and know-how of LMI and Edulog related to the Software, Documentation, and Supporting Materials, and Follow-On Products and Related Products.

"Related Products": Any school bus transportation product or component which is not a Follow-On Product but for which the utility and/or market appeal of such product or component relies heavily upon a Follow-On Product. That is, any such product or component which users would need to use if such users were already licensed to use a Follow-On Product.

"Royalty": the meaning set forth in section 4.2 hereof.

"Shareholder": Hien Nguyen.

"Software": The school bus transportation computer programs, as described in the Edulog User Manual current and delivered to Laidlaw at the date of execution of this Contract, to be provided by LMI under this Contract, including all current programs, and all upgrades, enhancements, and improvements thereof or thereto prepared or published at any time thereafter. Such computer software shall comprise all of LMI's and Edulog's software and computer programs used for its computerized school bus routing, scheduling and optimization system, including (without limitation) the following:

(a)  Geocoding Software

(b)  PTS-III Transportation Software including:
1)  Graphics Package
2)  Student Database Management Component
3)  Bus Stop Graphic Component
4)  Bus Run Graphics Component
5)  Bus Route Component
6)  Route Driving Directions
7)  Security Module
8)  Report Writer Component

- 4 -

**EXHIBIT A**

**Page 4  of 93**

18

9) Special Education Component

(c) Transportation Optimization System including:
    1) Bus Stop Optimization Software
    2) Run Building Optimization Software
    3) Route Coupling Optimization Software
    4) Routing and Scheduling Optimization Software

"Source Code": All program and library codes, source codes, security modules and codes, compilers, assemblers, similar supporting software, etc., and necessary and sufficient written narrative descriptions, to create the complete machine readable code(s) that constitute the Software, as well as sufficient written narrative descriptions, instructions and documentation to enable Laidlaw to understand the logic of the Source Code and Software and security modules and codes and to reconstruct, maintain and develop the Software, Documentation, and Supporting Materials.

"Supporting Materials": All instructions, manuals, software, labels, hardware, etc., necessary for Laidlaw to produce copies of the Software and Documentation having no less function and utility than Edulog's then current version of such Software and Documentation ("Useful Copy"), where such Useful Copies cannot be produced by use of photocopying or standard copying techniques on Laidlaw's computer workstations.

2.0    LICENSE

2.1    Perpetual Non-Exclusive License.
       IMI hereby grants to Laidlaw a perpetual and irrevocable non-exclusive license within the Licensed Territory to market, install, apply, maintain, develop, support, and use the Product for or in connection with school bus transportation.

2.2    Renewable Exclusive License.
       IMI also hereby grants to Laidlaw the exclusive license to market, install, apply, maintain, develop, support and use the Product for school bus transportation services within the Licensed Territory for the Initial Period and for any Extensions, subject to the provisions of section 2.3 and section 4.6 hereof. Termination at any time of the exclusive license described in this section 2.2 shall in no way affect or diminish the perpetual nonexclusive license granted pursuant to section 2.1, nor impact the payment of Royalties described in section 4.2.

- 5 -

EXHIBIT A

Page 5 of 93

2.3  **School Boards and School Districts.**

2.3.1  **Retention of Rights by LMI During the Currency of Exclusive License.**
Notwithstanding the grant of exclusive license to Laidlaw as described in section 2.2, and subject to the limitations set forth in this section 2.3, LMI shall have the right to continue to market the Product directly to school boards, school districts, schools and educational institutions, states, state agencies and federal agencies involved in schooling or education, any other entity whose primary purpose is to provide schooling or education to the public, and any agency of any such organizations or entities, for their own use (with no right to sublicense), subject to the terms of this Contract.
Notwithstanding anything herein contained, during the currency of the exclusive license described in section 2.2, neither LMI nor Edulog will have the right to, and each agrees that it will not, sell or license or authorize the use of the Product to or by consultants, private sector bus contractors other than Laidlaw, or other software companies, that are or may be in competition with Laidlaw or the Product at any time.

2.3.2  **Laidlaw Customers.**
Laidlaw shall have the exclusive right to market, install, apply, maintain and support the Product with Laidlaw Customers, but may at its discretion assign such right for a limited or unlimited period of time to LMI or Edulog or the nominee of either for a particular Laidlaw Customer or particular Laidlaw Customers.  Should a Laidlaw Customer advise Laidlaw of such customer's desire to deal directly with LMI rather than Laidlaw, Laidlaw shall not unreasonably refuse to grant to LMI the right to deal directly with such Customer. LMI and Edulog shall each give prior written notice to Laidlaw before approaching a Laidlaw Customer.  Laidlaw shall provide LMI with a current list of Laidlaw customers in order that LMI will have knowledge as to when written notice is required.  Laidlaw shall update said list from time to time.  LMI shall have no obligation to give prior written notice as to any potential customer not listed on the lists furnished to LMI or otherwise known to LMI to be a Laidlaw Customer.

2.3.3  **Facilitation.**

– 6 –

The parties will work together to attempt to minimize the potential for conflict between them, and to define their respective markets. LMI and Edulog will each use their best efforts to promote the use of contract school bus and other services provided by Laidlaw, with regard to their existing customers at any given time, and with regard to parties that are not at the time Laidlaw Customers. Laidlaw will use its best efforts to promote the use of the Software and related services provided by LMI, with regard to Laidlaw's existing customer base at any given time, and with regard to prospective customers and new accounts. LMI and Laidlaw will ensure that their employees, contractors and agents do not contravene the provisions of this Contract or breach LMI's obligations hereunder.

2.4  **Software and Documentation.**
LMI shall provide, or shall cause Edulog to provide, Laidlaw with two (2) copies of each item of Software and Documentation, as well as all necessary Supporting Materials, for each and every type of computer for which LMI or Edulog has released or does release a version of the Product and on which Laidlaw desires to use the Product.

  2.4.1  LMI shall provide, or shall cause Edulog to provide, diskette labels and similar materials free of charge if such labels are required by Laidlaw and cannot be reproduced by Laidlaw using the Supporting Materials and standard photocopiers and/or computer workstations.

  2.4.2  LMI shall make available to Laidlaw, at LMI's cost or Edulog's cost, whichever is lower, plus a reasonable service charge, not to exceed ten percent (10%), all Components of which Laidlaw is unable to produce Useful Copies by use of the Supporting Materials and standard photocopiers and/or computer workstations. LMI will promptly honor all such purchase requests by Laidlaw in the quantities requested. This provision shall apply only where Laidlaw agrees in writing that it is impractical or unreasonable to require LMI to provide Supporting Materials and shall not otherwise relieve LMI of its obligation to supply Supporting Materials.

2.5  **Copies.**
The Licenses granted hereunder shall entitle Laidlaw to make or cause to be made as many copies of the Software

- 7 -

EXHIBIT A

**Page 7  of 93**

21

H.E.N.

(including copies for back-up purposes), Documentation and Supporting Materials as are necessary for or in connection with Laidlaw's business without further permission of LMI or Edulog and regardless of whether such Software, Documentation and Supporting Materials are copyrighted or otherwise restricted or proprietary; provided, that all such copies shall be subject to the terms of this Contract.

2.6 **Copyright Markings.**
Unless authorized in writing by LMI or Edulog, Laidlaw will not knowingly delete Edulog's copyright notice, trademark, etc., in reproducing the Product.

2.7 **Product Distribution.**
Laidlaw may distribute copies of the Product and its Components for use consistent with the terms of this Contract by such means as it may choose, including but not limited to physical media, electronic transmission, or telecommunications.

2.8 **Unlimited Workstations.**
Laidlaw may concurrently use the Software for Laidlaw's business purposes on any number of computer workstations used, employed, owned, leased, rented or otherwise acquired by Laidlaw, its employees, consultants and customers.

2.9 **Restriction on Encroachment.**
LMI will, and will cause Edulog to take all necessary and reasonable actions in a timely manner to ensure that systems utilizing expertise, technology, procedures, or applications similar to those utilized in the Product (as, for example, the Para-Transit system licensed by Edulog to R & D Systems and pertaining initially to the Los Angeles market) which are developed or marketed by LMI or Edulog or their respective affiliates or related parties, are not utilized by their respective licensees or third parties for school bus operations, in competition with Laidlaw, during the term of the exclusive license granted to Laidlaw and described in section 2.2, (including any Extensions thereof).

2.10 **Continued Support.**
LMI shall at all times hereafter, continue to maintain, develop, support and improve the Product, or cause Edulog to do so for the benefit of Laidlaw.

3.0 **ESTABLISHMENT OF LAIDLAW ROUTING LOGISTICS DIVISION.**

3.1 **Establishment of Division.**

- 8 -

**EXHIBIT A**

**Page 8 of 93**

22

4bN

LMI will, and will cause Edulog to diligently assist
Laidlaw in establishing a Laidlaw owned and operated
Routing Logistics Division as quickly as is determined to
be feasible by Laidlaw over a twelve month period from
the date of this Contract.  Establishment of such a
Laidlaw division will include the transfer to Laidlaw of
five (5) employees of Edulog as may be mutually agreed
between LMI and Edulog, and assistance in hiring others
sufficient to enable Laidlaw to operate and market the
Product within the Licensed Territory, and to handle map
digitization, operation and maintenance of the Product in
operating environments, and implementation and training
in use of the Product with existing Laidlaw accounts and
new accounts.  Laidlaw shall be solely responsible for
all costs of said Division, subject to the provisions of
this Contract.

3.2   Lease of Premises.
      Edulog will enter into a lease agreement to lease to
      Laidlaw 5000 square feet of finished office space at the
      market rent therefor, but not to exceed $10.00 per annum
      per square foot of usable space, including all taxes,
      heating, air conditioning, operating and utility expenses
      (excluding only telephone) in Edulog's premises at 3000
      Palmer, Missoula, Montana (the "Edulog Building"), for
      use by the Laidlaw Routing Logistics Division.  Such
      office space will be finished to standards no less than
      those of the premises occupied by Edulog in the building
      at the date hereof, and will be completed and made ready
      for occupation as soon as reasonably possible.  Rent and
      the term of the lease will commence on the first day of
      the month following completion of the premises in a
      manner suitable for use and occupation.  The term of the
      lease will be five (5) years, with two (2) options to
      renew for subsequent periods of five (5) years each on
      the same terms and conditions except for the rent, which
      shall be at the market rate as agreed between Laidlaw and
      Edulog, or failing agreement, the market rent as
      determined by a single arbitrator selected by Edulog and
      Laidlaw, who shall submit the matter to such arbitrator
      for determination and be bound by such arbitrator's
      decision.

3.3   Ongoing Assistance.
      LMI will cause Edulog to permit Laidlaw personnel
      reasonable access at all times to all Edulog personnel,
      developmental, maintenance and support materials,
      documentation, resources and facilities necessary or
      desirable to assist Laidlaw in establishing its Laidlaw
      Routing Logistics Division and maximizing marketing,
      implementation, use and efficiency of the Product, at no
      cost to Laidlaw.

- 9 -

EXHIBIT A

Page 9  of 93

*4ØN*

3.4 <u>Proximity of Operations.</u>
LMI will cause Edulog to maintain all of its personnel and operations related to or engaged in development, support or maintenance of the Product at the Edulog Building and in proximity to the Laidlaw Routing Logistics Division, unless otherwise agreed by Laidlaw.

4.0 **PRICE**

4.1 <u>Price for Non-Exclusive License.</u>
In consideration for the grant of the perpetual non-exclusive license pertaining to the Product described in section 2.1, establishment of the Laidlaw Routing Logistics Division utilizing the Product, provision of all training and other assistance by LMI and Edulog, necessary to so do, and provision by LMI and Edulog of all maintenance, support and development services described herein, Laidlaw will pay LMI the sum of U.S. $1,500,000.00 upon the signing of this Contract.

4.2 <u>Royalty.</u>
Laidlaw will pay LMI a royalty (the "Royalty"), for each New Bus placed into service in the Licensed Territory after the date of this Contract, as follows:

| Aggregate Number of New Buses per Fiscal Year | One-time Royalty Payable for each New Bus |
|---|---|
| 1 to 500 buses | $1,000 per bus up to 500 in total |
| More than 500 buses | $1,250 per bus over 500 in total |

4.3 <u>"New Bus".</u>
For the purposes of this section 4.0, "New Bus" means any school bus (exclusive of spare buses) placed into service by Laidlaw after the date of this Agreement pursuant to a new contract for provision of school bus transportation services ("New Contract") obtained by Laidlaw with a school board or school district that is not at the time and was not previously a Laidlaw Customer ("new customer"), where a component of such New Contract is use or application of the Product in providing the service to be provided under such contract, provided that:

(a) any school bus placed into service with a new customer that had installed or used the Product or any other computerized routing or scheduling system prior to Laidlaw entering into a New Contract with it, other than by reason of a prebid study performed

– 10 –

**EXHIBIT A**

**Page 10 of 93**

24



by Laidlaw or LMI, shall be excluded from the
definition and not be considered to be a New Bus;

(b) if the number of school buses required under the New
Contract is reduced at any time or times during the
first 12 months of such contract as a result of
utilization of the Product, (including, but not
limited to, the Optimization Components, only the
remaining buses (excluding spares) required under
such contract after such reduction or reductions
have been effected shall be included in the
definition and considered to be New Buses, and any
Royalty previously paid for any buses deleted from
the contract shall be credited or refunded by LMI to
Laidlaw.

(c) if the New Contract is with a former Laidlaw
Customer, and no Royalty has ever been paid by
Laidlaw to LMI hereunder in connection with that
customer, such former Laidlaw Customer shall be
treated as a new customer for the purposes of this
clause.

4.4 <u>Entitlement to Royalty.</u>

4.4.1 For clarity, Edulog shall be entitled to receive a
Royalty pursuant to section 4.2 in the following
circumstances:

(a) if the installation of a computerized routing
system is specified in a bid or proposal by
Laidlaw to a new customer to provide annual
school bus transportation services to it, and
Laidlaw is successful in obtaining a New
Contract to provide New Buses through such
bid or proposal, unless a computerized
routing system other than the Product is
specified or required to meet the bid
specifications;

(b) if the installation of a computerized routing
system is a requirement of a bid tender for
which Laidlaw submits a bid, and Laidlaw is
successful in obtaining a New Contract to
provide New Buses through such bid, unless a
computerized routing system other than the
Product is specified or required to meet the
bid specifications;

(c) a pre-bid study was conducted by Laidlaw or
LMI using the Product in a significant way,
and such study was a component of a

- 11 -

EXHIBIT A

Page 11 of 93

25



successful bid by Laidlaw resulting in a New Contract to provide New Buses.

(d) if installation of Software with that new customer occurs within one (1) year after Laidlaw obtains a New Contract.

(e) notwithstanding the provisions of section 4.3(a), if IMI introduces Laidlaw to an existing customer of IMI that is not a Laidlaw Customer, which customer has been licensed by IMI to use the Software, and as a direct result of such introduction and the active promotion of Laidlaw by IMI, Laidlaw obtains a New Contract from such customer within twelve (12) months after such initial introduction.

4.5 <u>Short Term Contracts.</u> Notwithstanding the foregoing, if a Royalty is based upon a New Contract to provide New Buses that has a certain duration of one year or less, then 50% of the Royalty otherwise payable shall be payable during the first year of such New Contract, and the remaining 50% of the Royalty otherwise payable shall become due and payable in the second year of such contract if Laidlaw is successful in obtaining an extension or renewal of such contract, and shall be forgiven and extinguished if Laidlaw is not successful in obtaining such extension or renewal.

4.6 <u>Extension of Exclusive License.</u> Notwithstanding the other provisions of this Contract, (other than Events of Default), the exclusive license described in section 2.2 shall automatically be renewed for successive periods of five (5) years each commencing on the fifth anniversary of the date of this Contract (the "Extensions"), unless Laidlaw fails to pay IMI (or its permitted assignee) an aggregate of no less than U.S. $1.5 million in Royalties for the immediately preceding five (5) year period. Laidlaw shall be entitled to pay any deficiency in the Royalties such that the aggregate payment made is no less than U.S. $1.5 million for such five (5) year period, in order to obtain an Extension of the exclusive license described in section 2.2. Should Laidlaw fail to pay the said sum of U.S. $1.5 million for any such five (5) year period, IMI shall be entitled to withdraw the exclusivity of Laidlaw's license for the Product, but such failure shall not affect or limit the non-exclusive perpetual license described in section 2.1 hereof, nor affect Laidlaw's obligation to pay Royalties as set forth in section 4.2 hereof.

- 12 -

**EXHIBIT A**

**Page 12 of 93**

26



4.7 Additional Fees.
In addition to the contract price and Royalties aforesaid, Laidlaw will pay to LMI:

    4.7.1 for each installation by Laidlaw of the Software on a computer system, a fee of $1,000;

    4.7.2 for each feasibility or pre-bid study completed by Laidlaw utilizing the Software, a fee of $500.

    4.7.3 payment based on regional prices set forth on Schedule B for any installation with a Laidlaw Customer where the Laidlaw Customer requires its own ownership of the software license. The regional price schedule will be updated September 1, 1992, and annually thereafter. In such case, LMI will grant a license for the Software directly to such Laidlaw Customer, without further charge, and Laidlaw may charge the Laidlaw Customer for such license.

4.8 Royalty Payment Dates.
Royalties earned in each Fiscal Quarter shall be paid within 30 days following the end of such Fiscal Quarter.

4.9 Currency of Royalty.
The amounts in this section 4.0 prefaced with a "$" shall, unless otherwise specified, mean Canadian dollars for locations within Canada or Mexico, and United States dollars for locations within the United States of America, where a New Bus is put into service pursuant to a New Contract (or in the case of section 4.7.2, where the feasibility study is conducted).

5.0 INFRINGEMENT PROTECTION.

5.1 Royalties or other charges for any patent, trademark, copyright, trade secret or other proprietary information to be used in the Product shall be considered as included in the contract price set forth in section 4.0.

5.2 LMI warrants that neither the Product nor any Component, including elements provided by others and incorporated into the Product, infringes upon or violates any patent, trademark, copyright, trade secret, or other proprietary right. LMI shall indemnify and save harmless Laidlaw against any and all judgments, costs, damages, and expenses which may be incurred by Laidlaw in connection with any suit, action, or proceeding brought against Laidlaw for infringement or alleged infringement of any patent, trademark, copyright, trade secret or other proprietary right by a court of competent jurisdiction,

- 13 -

EXHIBIT A

Page 13 of 93

arising out of the use by Laidlaw or its customers of the Product or exercise of Laidlaw's license rights under this Contract. If any suit or suits for infringement of any patent, trademark, copyright, trade secret or other proprietary right be instituted against Laidlaw as above specified on account of the use of the Product, and if promptly notified, LMI shall assume the defense of such suit or suits and all expenses incident to the defense thereof; but it is expressly understood that in assuming the defense of such suit or suits LMI shall have control of same, and Laidlaw shall be kept fully informed as to the progress thereof and have the right to confer about and give advice and assistance regarding same.

5.3 In case the Product or a Component becomes the subject of any claim, suit, or proceeding for infringements, or in the event of an adjudication that such Product or Component constitutes infringement, or if the use or sale of such Product or Component is enjoined, LMI shall, at its option and expense either:

    (a) procure for Laidlaw the right to continue using the Product or Component;

    (b) replace it with non-infringing material providing service equal to that contracted for hereunder; or

    (c) modify it so it becomes non-infringing while providing service equal to that contracted for hereunder.

If LMI is unable to cure such infringement under any of the options set forth above, Laidlaw shall have the right to return such infringing material to LMI with a refund of price (which refund shall be proportionate to the importance of the infringing material to Laidlaw's ability to continue to use the Product) and payment of incidental damages to Laidlaw.

## 6.0   REPRESENTATIONS AND WARRANTIES

6.1 LMI and Shareholder jointly and severally represent and warrant to Laidlaw that:

    6.1.1 LMI is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Washington, and has all necessary authority and corporate power to deal with and license to others the Product, to deal with the Source Code, and to enter into and perform its obligations under this Agreement.

— 14 —

40U

6.1.2   Edulog is the sole beneficial and legal owner of the Product and Source Code and all rights (including copyright) relating thereto, free and clear of all liens, charges, encumbrances and adverse claims, and has granted to LMI the perpetual, exclusive and unlimited license and right to use, and to grant to others a license and right to use, the Product.

6.1.3   The execution and delivery of this Contract by LMI has been duly authorized by all necessary corporate or other action.

6.1.4   The Product and the Source Code, and the licensing and use thereof as contemplated in this Contract, do not and will not infringe upon the copyrights, patents, or intellectual property or other rights of others.

6.1.5   This Contract constitutes a legal, valid and binding obligation of each LMI and Shareholder enforceable against each of them in accordance with its terms.

6.1.6   Neither LMI nor Edulog has granted any licenses or rights of use of the Product to any third parties, other than those disclosed on Schedule C, and school boards and school districts.

6.1.7   Neither LMI nor Edulog has sold or transferred or granted any rights to acquire any interest in the Product or Source Code, or in the shares of LMI or Edulog, other than non-exclusive licenses for their own use granted to school boards, school districts, schools and educational institutions, states, state agencies and federal agencies involved in schooling or education; any other entity whose primary purpose is to provide schooling or education to the public, and any agency of any such organizations or entities, and will not do so during the term of the exclusive license and any Extensions thereof described in section 2.2.

6.1.8   All of the parties who currently hold licenses or rights to use the Product are fully described in Schedule C, and no such parties have any right to sublicense the Product. Forthwith after execution of this Contract, LMI will provide Laidlaw with written particulars of the geographic limitations on such rights and licenses, which of the parties listed in Schedule C have been granted a license

– 15 –

**EXHIBIT A**

**Page 15 of 93**



to use Transportation Optimization, and which of such parties licensed to use Transportation Optimization are not actively using it. LMI will promptly advise Laidlaw in writing of the names of all parties who are granted any licenses or rights to use the Product subsequent to the date of this Agreement, the geographic limitations on such licenses or rights, and the identity of component parts of the Product for which such licenses or rights have been granted.

6.1.9. Neither LMI nor Edulog is aware of any material deficiencies, problems or bugs in or with the Product or arising from its commercial use or application.

6.1.10 LMI, Edulog, the Product and the Source Code are not subject or party to any litigation or known claims, other than the suit described in Schedule A, which suit does to involve or affect the Product or the Source Code or any matter which is dealt with in this Contract.

6.1.11 The Product is known commercially as the Edulog System, and uses digitized maps and student data bases to provide efficient administration of school bus routing and routing changes for the student transportation business; the Product also has the capability to determine routes, and uses specialized mathematical optimization formulae to optimize routes.

6.1.12 The Product in general assists school transportation staff in performing student functions, bus functions, bus stop functions, bus run functions and generalized reporting, and tha programs forming part of the Product operate in a number of operating system environments, are on-line and interactive.

6.1.13 LMI has the ability to support, maintain and develop the Product, and to support its installation, maintenance and use in working environments.

6.1.14. The Edulog User Manual current and delivered to Laidlaw at the date of execution of this Contract contains a comprehensive description of the Software and its functions as at the date of this Contract.

- 16 -

*460√*

**7.0    CONFIDENTIAL INFORMATION**

7.1    "Confidential Information" shall mean all information relating to the business of Laidlaw or LMI which is by its nature or substance proprietary or confidential. LMI and Laidlaw shall take reasonable measures to safeguard each other's Confidential Information and shall take no less than the same degree of care as each uses to protect its own Confidential Information, provided that Laidlaw may disclose upon authorization by LMI, which will not be unreasonably withheld, LMI's Confidential Information to its consultants who require such access in the course of their work for Laidlaw, or to Laidlaw Customers to the extent necessary for Laidlaw to install or use the Product in providing services to such customers. The parties shall, if feasible, identify or mark Confidential Information as being such. Confidential Information does not include:

(a)    information which is generally available to or known within the school bus transportation business or LMI's or Edulog's business;

(b)    information which was previously known by the receiving party other than as a result of disclosure pursuant to this Contract;

(c)    information which is developed independantly by the receiving party or its consultants;

(d)    information which is disclosed to the party by a third party not known to be under a confidentiality obligation to the other party.

7.2    If required by any governmental authority having competent jurisdiction (including, without limitation, school boards or school districts with which Laidlaw may be dealing or proposing to deal), Laidlaw may disclose upon authorization by LMI, which will not be unreasonably withheld, LMI's Confidential Information to such party, provided Laidlaw shall take reasonable steps to request that the receiver maintain the confidentiality of such information.

7.3    The provisions of this Contract shall not relieve the parties of their respective obligations under any confidentiality agreements in place between the parties at the date hereof.

**8.0    PRODUCT WARRANTY**

8.1    <u>Workmanship and Materials.</u>

– 17 –

**EXHIBIT A**

**Page 17 of 93**



8.1.1 LMI warrants that the Product and all Components thereof furnished by LMI, whether or not manufactured by LMI, shall be of the kind and quality described in this Contract and the Documentation, shall be new and free of defects in workmanship, material and title, shall be of good and merchantable quality and shall be fit for its intended purpose. The Product and each Component delivered hereunder will conform to any detailed description respecting such Product and Component in this Contract in all respects including, but not limited to, physical characteristics, operating characteristics, power requirements, maintenance characteristics, modularity, compatibility and the like.

8.1.2 LMI shall assign to Laidlaw any warranties issued by outside suppliers, manufacturers and subcontractors. All warranties so assigned shall be in addition to and not in lieu of all warranties required under the terms of this Contract.

8.2 <u>Performance and Standards.</u>
LMI warrants that when the Product is placed in operation or used, it will perform the functions detailed in the Edulog User Manual current and delivered to Laidlaw at the date of execution of this Contract, and that the Software will be compatible with and operate properly on or with the Laidlaw or Laidlaw Customer's equipment for which it is intended.

8.3 <u>Services.</u>
LMI warrants to Laidlaw that the services under this Contract shall be performed with the degree of skill and care that is required by current, good and sound professional procedures and practices, and in conformance with generally accepted professional standards prevailing at the time the service is performed so as to ensure that the services performed are correct and appropriate for the purposes contemplated in this Contract and related specifications.

8.4 <u>Remedies.</u>
8.4.1 LMI hereby agrees that if at any time after the date hereof it shall appear that the Product or Component delivered hereunder does not meet the warranties specified above, and Laidlaw notifies LMI promptly upon the discovery of the defect or nonconformity, LMI shall acknowledge receipt of such notice of defect or nonconformity and shall inform Laidlaw in writing within five (5) days of

- 18 -

EXHIBIT A

Page 18 of 93

*HeW*

receipt of such notice as to whether:

8.4.1.1 IMI will, at its expense, immediately repair, correct or replace the Product or Component so that it will meet and conform to the warranties specified above; provided, however, such repair, correction or replacement shall be effected in such a manner as not to interfere with operations conducted by Laidlaw, and in such a manner as not to interfere with or breach any labor agreements between Laidlaw or its contractors or subcontractors and labor unions performing work for Laidlaw, its contractors or subcontractors; or

8.4.1.2 IMI authorizes Laidlaw, at Laidlaw's option and in Laidlaw's sole discretion, to repair or correct the Product or Component or have it repaired or corrected, so that the Product or Component will meet and conform to the warranty specified above, and agrees to provide the Source Code and pay Laidlaw the cost of such repair, replacement, reperformance or correction.

8.4.2 Freight charges and any other reasonable costs incurred in connection with any repair or replacement under warranty shall be borne by IMI.

8.5 Proper Operation.
IMI guarantees that as long as the Product or a Component is covered by warranty or maintenance, such Product or Component will work in accordance with the functions detailed in the Edulog User Manual current and delivered to Laidlaw at the date of execution of this Contract. IMI will, or will cause Edulog to use its best efforts to correct any defect, bug, error, or malfunction reported to IMI or Edulog by Laidlaw or a third party, or in any way known to IMI or Edulog. If Laidlaw encounters a problem which Laidlaw reasonably believes is attributable to a Product or Component covered by maintenance, Laidlaw shall use reasonable means to notify IMI promptly, and shall specify the exact nature of the problem to the best of Laidlaw's ability. IMI shall promptly correct the problem, and provide such correction to Laidlaw, or shall cause Edulog to do so.

8.6 Payment Schedule.
Corrections shall be free of charge to Laidlaw at all times.

– 19 –

EXHIBIT A

Page 19 of 93

33

*H&N*

## 9.0   MAINTENANCE

**9.1   Future Components.**
LMI shall furnish to Laidlaw, without charge and promptly upon publication or issuance, copies of all updated or additional manuals, guides, instructions or other written materials relating to the Product as well as any upgrades, modifications, enhancements or supplements to existing Components. Any such written materials shall be of sufficient quality so as to provide reasonable assistance to Laidlaw in using the Product. No such materials may reduce the capabilities of the Product. All such materials shall become part of the Product.

**9.2   Maintenance.**
LMI shall, or shall cause Edulog to, furnish to Laidlaw without charge, all necessary maintenance and support for the Product to enable efficient use of the Product and can Laidlaw such that Laidlaw can use the Product and can support its customers in every-day commercial school bus transportation applications of all sizes and types, for however long Laidlaw is licensed or authorized to use the Product.

**9.3   Product Support.**
LMI agrees that while the Product is covered by warranty or maintenance, LMI shall cause Edulog to provide to Laidlaw service regarding telephoned and written inquiries regarding the Product and this Contract. Laidlaw shall designate one department as its technical representative entitled to contact Edulog for assistance with questions and problems relating to the Product and LMI shall cause Edulog to provide to Laidlaw prompt and appropriate service in response to all such oral and/or written inquiries. Laidlaw agrees to use reasonable efforts to instruct its employees and consultants that all technical contacts with LMI or Edulog shall be through the technical representative and that individual users should not contact LMI or Edulog directly.

9.3.1   The technical representative shall be responsible only for interfacing with LMI and Edulog regarding use of the Product. Members of Laidlaw's legal, marketing and procurement staffs, etc., may continue to work directly with LMI or Edulog without charge to Laidlaw.

**9.4   Source Code.**
In the event that neither LMI or Edulog continues to provide support to Laidlaw for the Product, or should LMI be in default under this Contract, or should an Event of

– 20 –

**EXHIBIT A**

**Page 20 of 93**

Default on the part of LMI occur giving rise to the rights described in section 14.2, LMI shall, and shall cause Edulog to, make the Product and all computer codes, including but not limited to Source Code, available to Laidlaw to enable continued use, operation, and maintenance of the Product. For this purpose LMI shall: (1) forthwith after execution of this Contract enter into and deliver the Escrow Agreement appended hereto as Schedule D, and cause Edulog to do so at the same time; (2) forthwith upon execution of this Contract place a current copy of the Source Code pertaining to the Software furnished hereunder with the Escrow Agent in accordance with the said Escrow Agreement; (3) pay all fees related to such Escrow Agreement; and (4) update such Source Code and deposit same with the Escrow Agent whenever an update, enhancement, or modification of the Product is required to be supplied to Laidlaw, or cause Edulog to do so.

Laidlaw agrees to enter into and deliver the Escrow Agreement concurrently with execution of this Contract.

LMI hereby grants Laidlaw a contingent license to use the Source Code, effective in the event and for the purposes set forth above in this section.

**10.0    PRODUCT SUPPORT SERVICES**

10.1    Training.
IMI shall cause comprehensive initial training in the use of the Product to be provided to Laidlaw by Edulog. In addition, LMI agrees that for as long as Laidlaw shall use the Product, LMI shall cause Edulog to make available instructors at Laidlaw's facilities, or Edulog's facility if requested by Laidlaw, to train Laidlaw personnel in the use of the Product, at Edulog's then prevailing rates for training, or such other rates as may be agreed between LMI and Laidlaw. The training dates and times shall meet Laidlaw's needs as closely as may practically be accomplished by LMI.

10.2    Consulting Services.
In addition to the Product maintenance and other services provided under this Contract, LMI will, upon request, provide or cause Edulog to provide consulting services to Laidlaw at LMI's or Edulog's as the case may be, then prevailing rates, or such other rates as may be agreed between LMI and Laidlaw or Edulog and Laidlaw.

— 21 —

**EXHIBIT A**

**Page 21 of 93**

35

*Aan*

**11.0   INDEMNITY**

**11.1  Indemnification by LMI and Shareholder.**
LMI and Shareholder hereby jointly and severally
indemnify and hold harmless Laidlaw from and against all
claims, damages, losses, liabilities, costs and expenses
(including without limitation settlement costs and any
legal fees, court costs, accounting or other
investigating or defending expenses for any actions or
threatened actions) in connection with each and all of
the following:

  (a)   any misrepresentation or breach of any
representation or warranty made by LMI or the
Shareholder in this Contract;

  (b)   any breach of any covenant agreement or obligation
of LMI, Edulog or Shareholder contained in this
Contract or any other agreement, instrument or
document contemplated by this Contract.

**11.2  Indemnification by Laidlaw.**
Laidlaw hereby indemnifies and holds harmless LMI from
and against all claims, damages, losses, liabilities,
costs and expenses (including without limitation
settlement costs and any legal fees, court costs,
accounting or other expenses for investigating or
defending any actions or threatened actions) in
connection with each and all of the following:

  (a)   any misrepresentation or breach of any
representation or warranty made by Laidlaw in this
Contract;

  (b)   any breach of any covenant, agreement or obligation
of Laidlaw contained in this Contract or any other
agreement, instrument or document contemplated by
this Contract.

**11.3  Claims for Indemnification.**
Whenever any claim shall arise for indemnification under
this section 11, the claiming party (the "Claimant")
shall promptly notify the indemnifying party (the
"Indemnifier") of the claim and, when known, the facts
constituting the basis for such claim.  In the event of
any such claim for indemnification hereunder resulting
from or in connection with any claim or legal proceedings
by a third party, the notice shall specify, if known, the
amount or an estimate of the amount of the liability
arising therefrom.  The Claimant shall not settle or
compromise any claim by a third party for which it is
entitled to indemnification hereunder without the prior

– 22 –

**EXHIBIT A**

**Page 22 of 93**

36