F

Debra D. Parker
PARKER LAW FIRM
3245 Cummins Way
P.O. Box 7873
Missoula, MT 59807
Telephone: (406) 543-2302
Facsimile: (406) 493-0584
parkerlaw@bresnan.net

James D. Jordan
Devon D. Sharp
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7543
Facsimile: (214) 978-4359
jjordan@munsch.com
Telephone: (214) 855-7539
Facsimile: (214) 978-5369
dsharp@munsch.com

*Attorneys for Defendant Laidlaw Transit, Inc.*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| EDUCATION LOGISTICS, INC., a Montana corporation, and LOGISTICS MANAGEMENT, INC., a Washington corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> LAIDLAW TRANSIT, INC., a Delaware corporation, <br><br> Defendant. | CV 07-06-M-DWM <br><br> **LAIDLAW TRANSIT, INC.'S OBJECTIONS TO PLAINTIFFS' SIXTH SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION** |

TO: EDUCATION LOGISTICS, INC. and LOGISTICS MANAGEMENT, INC., and their attorneys Ronald A. Bender, Matthew J. Cuffe, Charles P. Nomellini and Samuel T. Bull.

**LAIDLAW TRANSIT INC'S OBJECTIONS TO PLAINTIFFS' SIXTH SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION**
MHDocs 3061729_5 10565.4

Page 1



EXHIBIT
tabbies
14

184

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS

1. Laidlaw objects to Plaintiffs' definition of the term "Bid" to the extent it includes "negotiated contracts between Laidlaw and customers or potential customers," as negotiated contracts to do not fall within the commonsense, everyday definition of the term "Bid."

## DEFINITIONS

1. "Contract" shall mean the Agreement between Laidlaw Transit, Inc. and Logistics Management, Inc., dated June 30, 1992, which is attached to Plaintiffs' Complaint as Exhibit A.

2. "Edulog" shall mean Plaintiff Education Logistics, Inc., along with all of its affiliates, subsidiaries, current and former employees, officers, directors, board members, managers, representatives, agents and anyone else acting on its behalf or otherwise subject to its control.

3. "GST" shall mean GeoSpatial Technologies, Inc., along with all of its affiliates, subsidiaries, current and former employees, officers, directors, board members, managers, representatives, agents and anyone else acting on its behalf or otherwise subject to its control.

4. "Laidlaw" shall mean Defendant Laidlaw Transit, Inc., along with all of its successors in interest, affiliates, subsidiaries, current and former employees, officers, directors, board members, managers, representatives, agents, "Laidlaw Planning Solutions" and anyone else acting on Laidlaw Transit Inc.'s behalf or otherwise subject to its control.

## OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all customers to whom Laidlaw provided school bus transportation services from January 11, 2003 to the present, including the name and address of the customer, the time period during which Laidlaw provided the services, the nature of the services including whether Laidlaw or any other party provided the customer with computerized bus routing software and the number of buses provided to the customer during each year.

### ANSWER:

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence. As worded, this Interrogatory would require Laidlaw to identify customers that have never used school bus routing software at all, or that have purchased, installed and operated school bus routing software on their own with no assistance from Laidlaw. Such information would be wholly irrelevant to the disputed issues and facts in this case.

Subject to and without waiving its objections, Laidlaw will identify all customers to which Laidlaw provided school bus transportation services from January 11, 2003 to the present,

provided that those customers utilize(d) some type of school bus routing software, and provided that Laidlaw actually purchased such software on the customer's behalf or influenced the customer's purchasing decision in some way. As requested, Laidlaw will also provide the name and address of the relevant customers, the time period during which Laidlaw provided the services, the nature of the services, and the number of buses provided to the customers during each year, to the extent such information is within Laidlaw's possession, custody or control.

## INTERROGATORY NO. 2:

Identify all customers or potential customers to which Laidlaw has submitted a bid for school bus contracting services and/or management services from January 11, 2003 to the present including bids submitted to then-existing Laidlaw customers. For each such customer or potential customer, list the name and address of the school district to which the bid was provided, the name of Laidlaw's contact at the school district, the date of the bid, whether the bid was accepted and if the bid provided for or required the use of school bus routing software.

## ANSWER:

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence. As worded, this Interrogatory would require Laidlaw to identify bids that did not include school bus routing software. Such information would be wholly irrelevant to the disputed issues and facts in this case.

Subject to and without waiving its objections, Laidlaw will identify all bids issued from January 11, 2003 to the present that included school bus routing software. As requested, Laidlaw will also provide the name and address of the school district to which the bid was provided, the name of Laidlaw's contact at the school district, the date of the bid, and whether the bid was accepted, to the extent such information is within Laidlaw's possession, custody or control.

## INTERROGATORY NO. 3:

Identify all Laidlaw customers to which Laidlaw or Laidlaw Planning Solutions has provided non-Edulog school bus routing software or to which Laidlaw or Laidlaw Planning Solutions has assisted in purchasing a non-Edulog product since January 11, 2003. For each such customer, provide the date of initial installation and the dates of any subsequent upgrades to the software.

## ANSWER:

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence. As worded, this Interrogatory would require Laidlaw to identify customers that Laidlaw has assisted in purchasing products other than school bus routing software. Such information would be wholly irrelevant to the disputed issues and facts in this case. "[T]he dates of any subsequent upgrades to [non-Edulog school bus routing] software" are also irrelevant to the disputed issues and facts in this case.

Subject to and without waiving its objections, Laidlaw will identify all Laidlaw customers to which Laidlaw or Laidlaw Planning Solutions has provided non-Edulog school bus

LAIDLAW TRANSIT INC'S OBJECTIONS TO PLAINTIFFS' SIXTH
SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION          Page 3
MHDocs 3061729_5 10565.4

186



routing software since January 11, 2003, as well as the date of initial installation of such software, to the extent such information is within Laidlaw's possession, custody or control.

## INTERROGATORY NO. 4:

Identify all current or former Laidlaw employees who participated in the negotiation, formation, and/or drafting of any agreements between Laidlaw and GST in effect at any time from January 11, 2003 to the present. Provide the name and title of such persons and a description of their participation.

## ANSWER:

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence. As worded, this Interrogatory potentially calls within its scope agreements that have nothing to do with school bus transportation services. Moreover, the existence of any agreement between Laidlaw and GST is irrelevant to the disputed issues and facts in this case.

Subject to and without waiving its objection, Laidlaw will identify all current or former Laidlaw employees who materially participated in the negotiation, formation, and/or drafting of any agreements between Laidlaw and GST in effect at any time from January 11, 2003 to the present, provided that such agreements relate to school bus transportation services. As requested, Laidlaw will also provide the name and title of each such current or former employee and a description of their participation, to the extent such information is within Laidlaw's possession, custody or control.

## INTERROGATORY NO. 5:

Identify all agreements between Laidlaw and any provider of routing, GPS, and/or any other boundary planning software in effect at any time from January 11, 2003 to the present. Provide the date of the agreement, the identity of the provider and the services to be provided by each party to the agreement.

## ANSWER:

Objection: Since the Contract specifically allows Laidlaw to enter agreements with other providers of school bus routing software after the expiration of the exclusive license period, Laidlaw objects to this Interrogatory as overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.

Laidlaw will not respond to this Request as it is currently worded.

## INTERROGATORY NO. 6:

Describe all efforts made by Laidlaw since January 11, 2003 to promote the use of the Software to existing and/or prospective Laidlaw customers.

## ANSWER:

Objections: Overly broad; not reasonably calculated to the lead to the discovery of admissible evidence; unduly burdensome and harassing; assumes issues and facts in dispute.

Laidlaw will not respond to this Interrogatory as it is currently worded.

## INTERROGATORY NO. 7:

List the name, title and contact information for all persons employed by Laidlaw in a sales capacity at any time since January 11, 2003 as a regional manager or any position subordinate to regional manager. For all such persons no longer employed by Laidlaw, provide their dates of employment with Laidlaw.

## ANSWER:

Objections: Overly broad; ambiguous; not reasonably calculated to lead to the discovery of admissible evidence. As worded, this Interrogatory would require Laidlaw to identify employees who had no involvement in school bus transportation services. Such information would be wholly irrelevant to the disputed issues and facts in this case. Laidlaw further objects to the term "regional manager" as vague.

Subject to and without waiving its objections, Laidlaw responds as follows: There are no "Regional Managers" employed in a sales capacity at Laidlaw. Laidlaw's counsel is happy to discuss a clarification of this Request with Plaintiffs' counsel if necessary.

### OBJECTIONS TO REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

All documents relating to agreements and proposed agreements between Laidlaw and GST.

## RESPONSE:

Objection: Since the Contract specifically allows Laidlaw to enter agreements with other providers of school bus routing software after the expiration of the exclusive license period, Laidlaw objects to this Request as overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Also, as worded, this Request potentially calls within its scope agreements and proposed agreements that have nothing to do with school bus transportation services. This Request might also require Laidlaw to violate confidentiality provisions of the agreements being requested. Additionally, this Request might require Laidlaw to disclose confidential commercial information. *See* FED. R. CIV. P. 45(c)(3)(B)(i). Finally, some of the documents requested may be subject to attorney-client privilege or may be privileged as a result of being prepared in anticipation of litigation.

Laidlaw will not respond to this Request as it is currently worded.

LAIDLAW TRANSIT INC'S OBJECTIONS TO PLAINTIFFS' SIXTH
SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION                    Page 5
MHDocs 3061729_5 10565.4

188

**REQUEST FOR PRODUCTION NO. 2:**

All documents evidencing communications between Laidlaw and/or GST and any third party which refer or relate to the provision of school bus transportation services, routing software, and/or GPS software by Laidlaw and GST, including but not limited to correspondence, requests for proposal, bids, feasibility studies, agreements, or contracts.

**RESPONSE:**

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence; not reasonably limited in time or subject matter; ambiguous. As worded, this Request would arguably require Laidlaw to produce every single communication between Laidlaw and each of Laidlaw's current and former customers for an unlimited period of time. Additionally, this Request might require Laidlaw to disclose confidential commercial information. *See* FED. R. CIV. P. 45(c)(3)(B)(i).

Laidlaw is unable to respond to this Request as it is currently worded. However, Laidlaw's counsel is happy to discuss a clarification of this Request with Plaintiffs' counsel.

**REQUEST FOR PRODUCTION NO. 3:**

All agreements entered into between Laidlaw and any provider of school bus routing software in effect at any time from January 11, 2003 to the present.

**RESPONSE:**

Objection: Since the Contract specifically allows Laidlaw to enter agreements with other providers of school bus routing software after the expiration of the exclusive license period, Laidlaw objects to this Request as overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, this Request might require Laidlaw to violate confidentiality provisions of the agreements being requested. Finally, this Request might require Laidlaw to disclose confidential commercial information. *See* FED. R. CIV. P. 45(c)(3)(B)(i).

Laidlaw will not respond to this Request as it is currently worded.

**REQUEST FOR PRODUCTION NO. 4:**

All documents evidencing communications between Laidlaw and any provider of school bus routing software from January 11, 2003 to the present relating to the negotiation, formation, implementation, and on-going maintenance of any agreement or potential agreement between Laidlaw and the software provider.

**RESPONSE:**

Objection: Since the Contract specifically allows Laidlaw to enter agreements with other providers of school bus routing software after the expiration of the exclusive license period, Laidlaw objects to this Request as overly broad, irrelevant, and not reasonably calculated to lead

LAIDLAW TRANSIT INC'S OBJECTIONS TO PLAINTIFFS' SIXTH
SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION                    Page 6
MHDocs 3061729_5 10565.4

189

to the discovery of admissible evidence. Additionally, this Request might require Laidlaw to disclose confidential commercial information. *See* FED. R. CIV. P. 45(c)(3)(B)(i).

Laidlaw will not respond to this Request as it is currently worded.

## REQUEST FOR PRODUCTION NO. 5:

All documents that refer or relate to efforts Laidlaw has made since January 11, 2003 to promote the use of the Software pursuant to Section 2.3.3 of the Contract.

## RESPONSE:

Objections: Overly broad; not reasonably calculated to the lead to the discovery of admissible evidence; unduly burdensome and harassing; assumes issues and facts in dispute.

Laidlaw will not respond to this Request as it is currently worded.

## REQUEST FOR PRODUCTION NO. 6:

All documents provided to Laidlaw employees for the purpose of marketing or promoting the Software, including but not limited to scripts or sales materials, that were used in any manner by Laidlaw at any time from January 11, 2003 to the present.

## RESPONSE:

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, Laidlaw will produce all documents within its possession, custody or control that are responsive to this Request.

## REQUEST FOR PRODUCTION NO. 7:

All documents provided to Laidlaw employees for the purpose of marketing or promoting Laidlaw's services to school districts including but not limited to scripts and sales materials, that were used by Laidlaw at any time from January 11, 2003 to the present.

## RESPONSE:

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence. As worded, this Request would require Laidlaw to produce marketing and/or promotional documents that have nothing to do with school bus routing software. Such information would be wholly irrelevant to the disputed issues and facts in this case.

Subject to and without waiving its objections, Laidlaw will produce all documents within its possession, custody or control that were provided to Laidlaw employees for the purpose of marketing or promoting Laidlaw's services to school districts, provided that such documents were used by Laidlaw between January 11, 2003 to the present, and provided that such documents include references to school bus routing software.

## REQUEST FOR PRODUCTION NO. 8:

All contracts in effect at any time between January 11, 2003 and the present between Laidlaw and any school district for the provision of school bus transportation services.

## RESPONSE:

Objections: Overly broad; unduly burdensome; not reasonably calculated to lead to the discovery of admissible evidence.

Laidlaw will not respond to this Request as it is currently worded.

## REQUEST FOR PRODUCTION NO. 9:

All documents constituting communications between Laidlaw and its school district customers or potential customers between January 11, 2003 and the present which relate in any way to Versatrans.

## RESPONSE:

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence. Communications between Laidlaw and its school district customers and potential customers relating to Versatrans could only conceivably be relevant to the extent they took place during the contract pitch stage (*i.e.*, when Laidlaw was pitching its services or products to the customer/potential customer), and to the extent they related to school bus routing software.

Subject to and without waiving the foregoing objections, Laidlaw will produce all bids within its possession, custody or control that were issued to its school district customers or potential customers from January 11, 2003 to the present which relate in any way to Versatrans.

## REQUEST FOR PRODUCTION NO. 10:

All documents reviewed, referred to or relied upon in answering Plaintiffs' Sixth Set of Interrogatories and Requests for Production.

## RESPONSE:

Objections: Overly broad; not reasonably calculated to lead to the discovery of admissible evidence; unduly burdensome and harassing.

Laidlaw will not respond to this Request as it is currently worded.

**LAIDLAW TRANSIT INC'S OBJECTIONS TO PLAINTIFFS' SIXTH
SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION**                      Page 8
MHDocs 3061729_5 10565.4

191

DATED this 23rd day of February, 2011.

_____
Debra D. Parker

and

James D. Jordan
Devon D. Sharp

*Attorneys for Defendant Laidlaw Transit, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2011, I delivered a true and correct copy of the foregoing document to the following counsel of record via facsimile and electronic mail:

Ronald A. Bender
Matthew J. Cuffe
WORDEN THANE P.C.
111 North Higgins, Suite 600
P.O. Box 4747
Missoula, MT  59806-4747
Facsimile: 406.721.6985
rbender@wthlaw.net
mcuffe@wthlaw.net

Charles Nomellini
Samuel T. Bull
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3400
Seattle, WA  98101
Facsimile: 406.721.6985
nomec@foster.com
bulls@foster.com

_____
Devon D. Sharp

LAIDLAW TRANSIT INC'S OBJECTIONS TO PLAINTIFFS' SIXTH
SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION
MHDocs 3061729_5 10565.4

Page 9

192



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| EDUCATION LOGISTICS, INC., a Montana corporation, and LOGISTICS MANAGEMENT, INC., a Washington corporation, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | MISC. ACTION NO. _____ (Civil Action No. 07-06-M-DWM |
| LAIDLAW TRANSIT, INC., a Delaware corporation | § § § | Action pending in: District of Montana, Missoula Division) |
| Defendant, | § § § | |
| v. | § § | |
| TYLER TECHNOLOGIES, INC., | § § § | |
| Respondent. | § | |

---

**Declaration Of Hien Nguyen In Support Of Plaintiffs' Emergency Motion To Compel**

---

HIEN NGUYEN declares:

1.      I am over the age of 18 and make this declaration based on my own personal knowledge.

2.      I am the CEO of both Education Logistics, Inc. and Logistics Management, Inc. (collectively, "Edulog"), Plaintiffs in *Education Logistics, Inc. v. Laidlaw Transit, Inc.*, Civil Action No. 07-06-M-DWM, District of Montana, Missoula Division.

3.      Prior to the advent of school bus routing software, school districts relied on school bus routing managers to create school bus routes to transport students to school.  Typically, this

NGUYEN DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 1



was done by overlaying a school district map on a cork board and using push pins to identify student addresses. Routing managers would then manually create string routes, assigning students to specific buses.

4.  The task of creating bus routes can be quite complex, because in addition to a thorough knowledge of the map and travel patterns in the district, the router must satisfy various school district policy constraints affecting bus routes. For example, most school districts require that the to- and from-school travel times for each pupil not exceed a certain amount of time. In this vein, a hypothetical Happy Valley School District might decide that the travel time for each of its pupils must be less than sixty minutes from the moment the pupil is picked up by a school bus to the moment that pupil arrives at school. The school bus routing manager must create routes to insure that each child in the school district arrives at school within the prescribed time.

5.  In the 1970s, working out of my basement, I developed a mathematical algorithm and accompanying software that optimized transportation routing efficiency. Over the ensuing decades, this algorithm has been used by school districts, and a slight variation of it by police departments and fire departments to optimize fleet sizes, travel routes, and response times. The public safety software that is used by police departments and fire departments is owned by a separate company that is not a party to this lawsuit.

6.  The Edulog Software is geared to school districts and is tailored to allow school districts to reduce the costs of bussing by reducing the number of buses required to transport students to school. Or put another way, the Edulog Software optimizes a school district's bus routes to enable school districts to use fewer buses to transport the students to school while satisfying all routing constraints that may be required by the district. In the case of hypothetical

NGUYEN DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 2

Happy Valley School District, by using the Edulog Software to create more efficient school bus routes, the school district might reduce the number of buses needed to transport its students from 50 to 35 and still get the students to school in the same amount of time. This reduction generates tremendous cost savings to the school district (15 X $40,000 = $600,000), even when taking into account the cost of the software license. Although license fees vary, the cost of an Edulog Software license to a 50-school bus school district is approximately $25,000.

7.      Because it significantly reduced the bussing costs of school districts, Edulog was very successful at selling licenses directly to school districts from the time of its founding in the late 1970s through the early 1990s.

8.      Following Edulog's success through the 1980s and into the early 1990s, Laidlaw approached Edulog and inquired about the possibility of purchasing Edulog. While Edulog declined Laidlaw's overtures, the parties ultimately negotiated a license agreement that allowed Laidlaw to use the Edulog Software subject to certain conditions. One of these conditions, contained in Section 2.3.3 of the 1992 Agreement, was the agreement that Laidlaw would "use its best efforts to promote the use of the Software and related services" provided by Edulog to its school district customers and to prospective clients. A copy of the 1992 Agreement is attached to the Complaint (which is attached to the Bull Declaration filed in support of Edulog's motion to compel).

9.      I believed that the 1992 Agreement would enable Edulog and Laidlaw to leverage their strong market positions to expand their client bases. For Edulog, the 1992 Agreement promised to provide it with exposure to Laidlaw's existing and prospective customers with the anticipated promotion by Laidlaw of its software. Laidlaw, on the other hand, would receive the

NGUYEN DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 3

benefit of having a license with the industry-best optimization software that it could use to attract new customers.

10.     From 1992 to 1997, Edulog and Laidlaw had an "exclusive" license agreement. During the period of the exclusive license, Laidlaw was barred from entering into licensing agreements with other bus routing software developers (§ 16.1) and Edulog was not allowed to license the Edulog Software to any other school bus contractors (§ 2.2).

11.     Shortly after the signing of the 1992 Agreement, it became clear that Laidlaw salespeople and junior management were not thrilled with the fees that the 1992 Agreement required Laidlaw to pay when a school district purchased the Edulog Software. For example, pursuant to Sections 4.2 and 4.4 of the 1992 Agreement, Laidlaw has to pay a per-bus royalty to Edulog under certain circumstances.

12.     In 1997, Laidlaw declined to renew the exclusive license and the license converted to a non-exclusive license, paving the way for Laidlaw to enter into licensing agreements with other software providers.

13.     I believe that the communications and contracts exchanged between Laidlaw and Versatrans will be directly relevant to whether Laidlaw has been promoting Versatrans at the expense of Edulog. I expect these documents to show that Laidlaw was working hand-in-hand with Versatrans to pitch Versatrans at the expense of Edulog, that Laidlaw was otherwise actively promoting Versatrans software, and that Laidlaw was denigrating the Edulog Software.

/

/

/

NGUYEN DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 4

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 8th day of March, 2011, in Missoula, Montana.

_____
Hien Nguyen



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| EDUCATION LOGISTICS, INC., a Montana corporation, and LOGISTICS MANAGEMENT, INC., a Washington corporation, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | MISC. ACTION NO. (Civil Action No. 07-06-M-DWM |
| LAIDLAW TRANSIT, INC., a Delaware Corporation | § § § | Action pending in: District of Montana, Missoula Division) |
| Defendant, | § § | |
| v. | § § | |
| TYLER TECHNOLOGIES, INC., | § § | |
| Respondent. | § | |

---

### Declaration Of Bill Swendsen In Support Of Plaintiffs' Emergency Motion To Compel

---

BILL SWENDSEN declares:

1.     I am over the age of 18 and make this declaration based on my own personal knowledge.

2.     I am currently employed by Plaintiff Education Logistics, Inc. ("Edulog") as Senior Account Manager.

3.     Prior to working at Edulog, I was employed by Laidlaw for approximately 15 years in various positions.

4.     I was hired by Laidlaw in August of 1991 to be the Branch Manager at the Hudson, Wisconsin Laidlaw operation. I was responsible for everything at that Branch. These duties included but were not limited to: routing of the buses, developing and maintaining the

SWENDSEN DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 1

**EXHIBIT**

**C**

tabbies

budget for Hudson, employee relations, hiring bus drivers, working with the district in managing the contract, and other related duties.

5.      I was promoted to a new position as Branch Manager in Bartonville, Illinois in February 1992. This was a two terminal operation serving approximately 15 school districts just outside of Peoria, Illinois. While at this location, I was the manager of one of the first locations at which Laidlaw took advantage of the 1992 Edulog/Laidlaw Agreement by installing Edulog's routing software at both of the Laidlaw terminals. I was responsible for all activities in Bartonville, the same as Hudson, but with over 90 buses. In approximately November of 1993, I was promoted to Area Manager for Central Illinois. In that position I was responsible for about 12 Laidlaw branches in that area. I was responsible for all aspects of the 12 branches.

6.      In December of 1994 I was promoted to General Manager of the Laidlaw Computerized Routing Division ("LCRD"), located in Missoula, Montana. At the time LCRD rented space in the current Edulog building. As General Manager I was responsible for managing the group of about 15 employees in this division. I was also responsible for managing the 1992 Laidlaw/Edulog Agreement, working closely with the then President of Edulog, Clint Rooley and CEO, Dr. Nguyen. I reported to the Laidlaw's Director of Strategic Planning, Diane Dennis-Finley, who was located in the corporate offices in Burlington, ON, Canada. Diane reported directly to the President of Laidlaw, John Grainger.

7.      The LCRD group was responsible for all computer routing for Laidlaw, both at current sites and for new school districts. As part of my duties in managing the 1992 Laidlaw/Edulog Agreement, I was responsible for implementing the agreement and for the payment of fees and royalties that were due to Edulog.

SWENDSEN DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 2

8.    Private bus contractors like Laidlaw contract with school districts to provide various bussing services.  In many cases, Laidlaw will contract with a school district to provide the full scope of the school district's bussing needs, providing school buses, bus drivers, and coordinating the transportation of all of a school district's students to and from school.  In other cases, Laidlaw will sign a more limited management contract in which it helps manage a school district's fleet.

9.    Generally, the cost of bussing students to school is directly related to the number of school buses that a school district uses to transport its students.  The more buses a school district uses to transport its students, the more the school district will pay in transportation costs.  For example, a private bus contractor often bases its contracts with school districts on a per-bus fee.  The fee is typically around $40,000 per bus, though it varies according to the unique attributes and needs of each school district.  Because of this, school districts have an incentive to create efficient routes to minimize the number of school buses they rely upon to transport their students to school.

10.    While Laidlaw's contracts with school districts vary, in many instances, the amount that Laidlaw receives under a contract is directly related to the number of school buses that a school district operates.   In these circumstances, the more school buses that a school district uses, the more money Laidlaw is paid.

11.    While I was at Laidlaw, Laidlaw sales personnel frequently had a counter-incentive to avoid use of the Edulog Software, lest the royalty fees and other fees that might be due under the 1992 Laidlaw/Edulog Agreement cut into their own bottom lines.

SWENDSEN DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 3

51131309.1

12.     In 1997, Laidlaw declined to renew the exclusive license and the license converted to a non-exclusive license, paving the way for Laidlaw to enter into licensing agreements with other software providers.  Since 1997, Laidlaw has entered into licensing agreements with several other school bus routing software developers, including Versatrans, GeoSpatial Technologies, and others.

13.     Edulog expects that the communications and contracts exchanged between Laidlaw and Versatrans are directly relevant to whether Laidlaw has been promoting Versatrans at the expense of Edulog.  Edulog expects these documents to show that Laidlaw was working hand-in-hand with Versatrans to pitch Versatrans at the expense of Edulog, that Laidlaw was otherwise actively promoting Versatrans software, and that Laidlaw was denigrating the Edulog Software.  I am personally aware that after the end of the exclusive period of the 1992 Laidlaw/Edulog Agreement, Laidlaw purchased a substantial number of Versatrans licenses and encouraged several school districts to use Versatrans instead of the Edulog Software.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 8th day of March, 2011, in Missoula, Montana.

_____
Bill Swendsen



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

EDUCATION LOGISTICS, INC., a
Montana corporation, and LOGISTICS
MANAGEMENT, INC., a Washington
corporation,

     Plaintiffs,

v.

LAIDLAW TRANSIT, INC., a Delaware
corporation

     Defendant,

v.

TYLER TECHNOLOGIES, INC.,

     Respondent.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

MISC. ACTION NO. _____
(Civil Action No. 07-06-M-DWM
Action pending in: District of Montana,
Missoula Division)

---

### Declaration Of Alan C. Hess In Support Of Plaintiffs' Emergency Motion To Compel

---

ALAN C. HESS, Ph. D. declares:

1.     I am over the age of 18 and make this declaration based on my own personal

knowledge.

2.     I am a Professor of Finance and Business Economics in the Michael G. Foster

School of Business at the University of Washington, and an Academic Affiliate of Finance

Scholars Group. I hold M.S. and Ph.D. degrees in economics from Carnegie Mellon University

and a B.S. in industrial management from Purdue University.  I have served in the Federal

Reserve System and the Securities and Exchange Commission. My academic and consulting

interests encompass both economics and finance.



HESS DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 1

51131311 1

3.     I have been engaged by Plaintiffs Education Logistics, Inc. and Logistics Management, Inc. (collectively, "Edulog") in the a lawsuit pending in the U.S. District Court for the District of Montana captioned *Education Logistics, Inc. v. Laidlaw Transit, Inc.*, Cause No. CV02-183 (the "Montana Action"). In the Montana Action, Edulog has engaged me to estimate the damages it has suffered from Laidlaw's alleged failure to promote Edulog's school bus routing software ("Edulog Software").

4.     Based on the expectations theory of damages,[1] Edulog's damages from Laidlaw's breach of contract is the difference between what Edulog's profits would have been absent the breach less what they actually were with the breach. In order to calculate these damages, I intend to create a model that analyzes the school bus routing software market over time, and that looks at the effect that Laidlaw's promotion or lack thereof has had on the sales of the Edulog Software and competing software. In creating this model, I intend to review three distinct time periods for the school bus routing software market: (1) pre-1992 Edulog/Laidlaw Agreement; (2) the period in which the Edulog/Laidlaw license was "exclusive" (1992-1997); and (3) post-exclusivity (1997 to present).

5.     In order to assist in the construction of this market analysis, I asked Edulog to compile the specific data requested in Edulog's subpoena to Tyler and other bus routing software developers. I tried to gather this information independently, but could not identify any source for school bus routing software data generally, or for company-specific data. If I do not receive the

------

[1] John H. Barton, 1972, "The Economic Basis of Damages for Breach of Contract," *J. of Legal Studies* V. 1, No. 1, pp. 277-304. Victoria A. Lazear, 2001, "Estimating Lost Profits and Economic Losses," in Roman L. Weil, Michael J. Wagner, and Peter B. Frank, *Litigation Services Handbook: The Role of the Financial Expert*, (3rd ed.) New York, John Wiley & Sons.

HESS DECLARATION IN SUPPORT OF PLAINTIFFS'
EMERGENCY MOTION TO COMPEL - 2

data requested, it will be extremely difficult for me to perform a market analysis to determine the effects that Laidlaw's promotion or non-promotion has had on Edulog's marketshare and profits.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 8th day of March, 2011, in Seattle, Washington.

_Alan C. Hess_

Alan C. Hess, Ph. D.