IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDUCATION LOGISTICS, INC., ET AL. | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | |
| LAIDLAW TRANSIT, INC. | § § | NO. 3-11-MC-036-L-BD |
| Defendant, | § § | |
| VS. | § § | |
| TYLER TECHNOLOGIES, INC. | § § | |
| Respondent. | § § | |

## MEMORANDUM ORDER

Education Logistics, Inc., and Logistics Management, Inc. ("Edulog"), plaintiffs in a lawsuit against Laidlaw Transit, Inc. ("Laidlaw") pending in Montana federal court ("the Montana Litigation"), have filed a motion to compel non-party Tyler Technologies, Inc. ("TTI") to comply with a Rule 45 subpoena for the production of documents. For the reasons stated herein, the motion is denied.

A brief overview of the subject matter of the Montana Litigation is necessary to the disposition of the instant motion. At issue in that lawsuit is a contract between Edulog, a developer of school bus routing software, and Laidlaw, a school bus contractor, which established a five-year exclusive licensing agreement between the companies beginning in 1992. The contract contains a "duty to promote" provision requiring Laidlaw to "use its best efforts to promote the use of the Software and related services provided by [Edulog], with regard to Laidlaw's existing customer base

at any given time, and with regard to prospective customers and new accounts." (*See* Jt. Stat. Rep. App. at 21, ¶ 2.3.3). According to Edulog, Laidlaw breached the contract by encouraging several school districts to use software manufactured by VersaTrans Solutions, Inc. ("VersaTrans"), an affiliate of Dallas-based TTI, following the expiration of the five-year exclusive licensing agreement,[1] resulting in the loss of licensing fees and royalties to Edulog. (*See id.* at 11, ¶¶ 22, 24 & *id.* at 201, ¶ 13).

As part of discovery in the Montana Litigation, Edulog served TTI with a Rule 45 subpoena for the production of documents. Nine of the 13 document requests are in dispute.[2] Three requests, collectively referred to as the "Proposal Documents," seek:

- documents reflecting the number of requests for proposals that VersaTrans received from school districts or school bus contractors (such as Laidlaw) in each year from 2003 to present;

- documents reflecting the number of requests for proposals received from school districts or school bus contractors (such as Laidlaw) to which VersaTrans responded in each year from 2003 to present; and

- all VersaTrans responses to requests for proposals received from school districts or school bus contractors (such as Laidlaw) from 2003 to present.

(*Id.* at 149, RFP #5-7). Six requests, collectively referred to as the "Sales Documents," ask for:

- documents reflecting revenue received by VersaTrans relating to the sale of routing software from initial sales to school districts in each year since 1987, or since VersaTrans's inception, if VersaTrans was not then in business;

---

[1] In reversing a final summary judgment in favor of Laidlaw, the Ninth Circuit determined that the duty to promote Edulog's software continued beyond the term of the exclusive licensing agreement, but that any claims based on the "duty to promote" provision in the contract accruing before January 11, 2003, were barred by limitations. *See Education Logistics, Inc. v. Laidlaw Transit, Inc.*, 390 Fed.Appx. 742, 743-44, 2010 WL 3005986 at *1-2 (9th Cir. Aug. 2, 2010).

[2] TTI has agreed to produce documents responsive to Request Nos. 1-4, which seek contracts, correspondence, memos, notes, faxes, emails, and other documents relating to Laidlaw. (*See* Jt. Stat. Rep. at 2-3 & Jt. Stat. Rep. App. at 148-49).

- documents reflecting revenue received by VersaTrans from annual licensing and/or maintenance fees relating to routing software from each school district in each year since 1987, or since VersaTrans's inception, if VersaTrans was not then in business;

- documents reflecting VersaTrans's aggregate sales of routing software in each year since 1987, or since VersaTrans's inception, if VersaTrans was not then in business;

- documents reflecting the number of salespeople in VersaTrans's sales force in each year since 1987, or since VersaTrans's inception, if VersaTrans was not then in business;

- documents reflecting VersaTrans's market and sales promotion budget in each year since 1987, or since VersaTrans's inception, if VersaTrans was not then in business; and

- documents reflecting the number of sales calls made by VersaTrans on school districts in each year since 1987, or since VersaTrans's inception, if VersaTrans was not then in business.

(*Id.* at 149-50, RFP #8-13). TTI objects that these documents are confidential, proprietary, and protected from disclosure under Rule 45. Edulog counters that some of the information is not confidential and that all of the information is necessary to the presentation of its case, particularly its damages model. The parties have briefed their respective positions in a joint status report filed on March 17, 2011, and the motion is ripe for determination.

No absolute privilege for confidential information or trade secrets exists under federal law. *See Cmedia, LLC v. LifeKey Healthcare. LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003), *citing Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 671 (S.D. Tex. 1990). However, on motion, a court may modify or quash a Rule 45 subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information[.]" FED. R. CIV. P.

45(c)(3)(B)(i). The moving party has the burden to establish that the information sought is a trade secret or otherwise confidential, and that disclosure might be harmful. *See Cmedia*, 216 F.R.D. at 390-91. Disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor. *Id., citing Echostar Communications Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391, 395 (D. Col. 1998). If the moving party meets this burden, the party seeking discovery must show that the requested materials are relevant and necessary. *Id.* The court then balances the need for the confidential information against the potential for injury resulting from disclosure. *Id.* Even if the requested documents are relevant, discovery will not be permitted if the party seeking discovery fails to show need or if the potential harm caused by production outweighs the benefit. *Id., citing Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

The court has little difficulty concluding that the Proposal Documents and Sales Documents contain confidential commercial information. The materials requested by Edulog, a direct competitor of TTI, include documents reflecting: (1) the number of requests for proposals received by VersaTrans, a TTI affiliate, from school districts and school bus customers dating back to 2003; (2) responses to such proposals; (3) revenue received by VersaTrans from sales, licensing fees, and maintenance fees since 1987; (4) the number of sales representatives employed by VersaTrans since 1987; (5) the number of sales calls made by VersaTrans representatives on school districts since 1987; and (5) the marketing and sales promotion budget of VersaTrans dating back to 1987. (*See* Jt. Stat. Rep. App. at 149-50). This is the type of information that a private company, like TTI, would typically keep secret. (*See id.* at 213-14, ¶¶ 6-7). The court also determines that disclosure of this information to a direct competitor would be harmful to TTI. *See Cmedia*, 216 F.R.D. at 391 (disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor).

Therefore, unless Edulog can show that the requested materials are relevant and necessary, and that its need for the documents outweighs the potential harm to TTI, the court will not order production.

Edulog has failed to meet this burden. Although Edulog mentions in passing that the Proposal Documents are relevant to the issue of liability, (*see* Jt. Stat. Rep. at 7, 22), no explanation is offered as to how any of those documents relate to Laidlaw's alleged breach of the exclusive licensing agreement made the basis of the Montana Litigation. Nor can the court envision how information about proposals involving school bus contractors other than Laidlaw would even remotely relate to Edulog's breach of contract claim. Instead, Edulog focuses on the need for Proposal Documents and Sales Documents to prepare its damages model. In support of that argument, Edulog relies on the declaration of Dr. Alan C. Hess, an economist, who has been retained "to estimate the damages [Edulog] has suffered from Laidlaw's alleged failure to promote Edulog's school bus routing software." (*See* Jt. Stat. Rep. App. at 208, ¶ 3). According to Hess, his damages model is based on empirical procedures that involve, *inter alia*, "estimating the relationships among Edulog's sales versus sales of Edulog's competitors, Edulog's sales efforts and the sales efforts of its competitors, and Edulog's prices relative to the prices of its competitors." (*Id.* at 208-09, ¶ 5). Hess explains:

> First, my analysis of the data for the years 1987 to 1992 will create a base period for Edulog's sales that can be used as a benchmark to project what Edulog's sales would have been absent its contract with Laidlaw. Second, I add data for the years from 1992 to 1997 and test whether the relationships between Edulog's sales and those of its competitors changed from the base period. If Laidlaw actively promoted Edulog's software, Edulog's sales should be higher than they would have been absent the promotion. If Edulog's sales in the promotion period were not higher, this can be interpreted as evidence that Laidlaw did not actively promote Edulog's products. The difference between Edulog's actual sales in the second period less what they would have been based on the relationships that prevailed

in the base period is a direct input into my estmate [*sic*] of Edulog's damages. Third, I add data from 1998 to the present to see if the relationships between Edulog's sales and those of its competitors changed after Edulog's joint exclusivity contract with Laidlaw as [*sic*] terminated. If Laidlaw had been promoting Edulog's sales, after the promotion stopped Eduulog's [*sic*] sales should have decreased. If they did not, this is consistent with the view that Laidlaw did not promote Edulog's products.

As a check on my analysis, I will repeat it for each of Edulog's competitors. Doing so indicates which competitors gained market share and whether their market share gains were at the expense of Edulog.

In order to assist in the construction of this market analysis, I asked Edulog to compile the specific data requested in Edulog's subpoena to Tyler and other bus routing software developers. I tried to gather this information independently, but could not identify any source for school bus routing software data generally, or for company-specific data. If I do not receive the data requested, it will be difficult for me to perform a market analysis to determine the effects that Laidlaw's promotion or non-promotion has had on Edulog's marketshare and profits.

In particular, I request data on Edulog's competitors' quantities of sales each year, on the prices each of them charged for their products that competed with Edulog, and on the amounts of money they spent on promoting their products. Based on my past experiences in using these types of data, the sales and promotion data can be found from the companies' monthly and annual financial reports and the price data can be found from the companies' responses to school districts' RFPs.

(*Id.* at 209-10, ¶¶ 6-9).

Even if the court accepts that Hess needs confidential business information from Edulog competitors in order to "check" his analysis of damages,[3] the potential harm to TTI in disclosing this

---

[3] The court questions whether the attenuated link between VersaTrans's success in the marketplace and the losses sustained by Edulog as a result of Laidlaw's alleged breach of the "duty to promote" provision of the contract is sufficient to establish necessity. *See Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 524-25 (W.D. Tenn. 1999) (sales, marketing, and financial information of non-party competitor were not relevant where party seeking discovery could establish no more than a tenuous connection between non-party's marketplace success and tortious intereference claim).

information far outweighs any benefit to Edulog. As James Guzewich, President of the VersaTrans Division of TTI, explains in his declaration:

- documents reflecting the number of requests for proposals received from school districts or school bus contractors, and responses thereto, contain confidential information about the manner in which TTI and VersaTrans price their software and services, the manner in which services are performed, the identity of existing clients, and strategies on obtaining new clients;

- documents reflecting sales of routing software and revenues contain confidential information regarding current, former, and prospective customers, and the financial strengths and weaknesses of TTI and VersaTrans; and

- documents reflecting the number of salespeople in the VersaTrans sales force, the size of VersaTrans's marketing and sales promotion budget, and the number of sales calls made by VersaTrans contain confidential information relating to marketing and sales strategies, methodologies, and strengths, weaknesses, and challenges not currently known to competitors.

(*See id.* at 211, ¶ 1 & *id.* at 214-15, ¶¶ 8-10). If any of this information is revealed to Edulog, it likely would damage TTI's ability to compete in the marketplace. (*Id.*). Moreover, as a non-party to the Montana Litigation, TTI is unable to protect its interests should any of the confidential information be disclosed, even if done so pursuant to a protective order. *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990); *In re Stewart Title Co.*, No. H-09-247, 2009 WL 1708079 at *2 (S.D. Tex. Jun 17, 2009). The court therefore declines to compel the production of the Proposal Documents and Sales Documents. TTI's objections to Request Nos. 5-13 are sustained.

## CONCLUSION

Edulog's motion to compel document production [Doc. #2] is denied. Expect for those documents specified in Request Nos. 1-4, which TTI has agreed to produce under a protective order, TTI need not comply with the Rule 45 subpoena.

SO ORDERED.

DATED: April 8, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE